IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **SHEKKU ABU-BAKAR GBEMEH,** : <br> : <br> **Plaintiff,** : <br> : <br> v.  : <br> : <br> **ARE TELECOMMUNICATIONS, LLC,** : <br> *et al.*, : <br> : <br> **Defendants.** : <br> _____ : | **CASE NO:** <br> **7:25-cv-94–WLS** |

## ORDER

On July 17, 2025, *pro se* Plaintiff Sheku Abu-Bakar Gbemeh filed a Complaint for Employment Discrimination and Wage Violations ("Complaint") (Doc. 1) against ARE Telecommunications, LLC ("ARE"), Mediacom Communications Corp. ("Mediacom"), and Communications Unlimited, Inc.[1] ("CUI" and together with ARE and Mediacom, the "Defendants"). Plaintiff asserts the following claims:

1.  Americans with Disabilities Act ("ADA"): Disability Discrimination (Count I) and Retaliation (Count II);

2.  Fair Labor Standards Act ("FLSA"): Wage and Hour Violations (Count III);

3.  OSHA-Protected Activity: Retaliation (Count IV);

4.  § 1981: Racial Discrimination (Count VII);

5.  Civil Rights Act (Title VII): Racial Discrimination (Count VIII) and Retaliation (Count IX);

Plaintiff also asserts claims of Intentional Infliction of Emotional Distress (Count V) and Constructive Discharge (Count X), and asserts the Defendants are jointly and severally liable (Count VI).

---

[1] Plaintiff lists CUI Cable Services in the caption and at various places in the text of the Complaint. However, in listing the Parties to the Complaint, Plaintiff names Communications Unlimited, Inc., but not CUI Cable Services. (*See* Doc. 1 Section II. PARTIES). It is unclear whether CUI Cable Services is a separate entity or what, if any, relationship CUI Cable Services has with Communications Unlimited, Inc.

1

Presently before the Court is Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form AO 239) (Doc. 2) ("IFP Application"). For the following reasons, Plaintiff's IFP Application (Doc. 2) is **GRANTED**, and thus, Plaintiff's Complaint is ripe for preliminary review.

## **DISCUSSION**

Under 28 U.S.C. § 1915(a)(1), the Court "may authorize . . . any suit, action or proceeding . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[2] *See also Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (explaining that § 1915 is designed to provide indigent litigants with meaningful access to courts). In determining whether a litigant may proceed without prepayment of the filing fee, the Court must follow a two-step process. *Procup v. Strickland*, 760 F.2d 1107, 1114 (11th Cir. 1985). First, the Court assesses Plaintiff's ability to prepay the cost and fees associated with filing a civil case in district court. *Id.* Second, "[o]nly after making a finding of poverty," the Court reviews the sufficiency of the complaint, as required by 28 U.S.C. § 1915(e). *Id.*

## I.   IFP APPLICATION

Beginning at the first step, the Court finds that Plaintiff meets the poverty requirements of 28 U.S.C. § 1915. Plaintiff's IFP Application shows he had $100 in cash, no money in any bank accounts or financial institutions (Doc. 2 at 2) and that he owns no assets (*Id.*). Until October 2024, Plaintiff was employed at ARE earning gross monthly pay of $2400. (*Id.*) The termination of Plaintiff's employment is the subject of his Complaint. The only income Plaintiff receives is disability income of $967 per month which he uses for rent, food, and essential living expenses. (*Id.* at 2, 4–5). On these facts, the Court finds Plaintiff is exempt from prepaying filing fees under 28 U.S.C. § 1915(a).

Accordingly, Plaintiff's IFP Application (Doc. 2) is **GRANTED**.

---

[2] Although Congress used the word "prisoner" here, 28 U.S.C. § 1915 applies to non-prisoner indigent litigants as well as prisoners. *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1306 n.1 (11th Cir. 2004).

## II. SUFFICIENCY OF PLAINTIFF'S COMPLAINT

### A. Standard

Next, the Court reviews the sufficiency of the claims in Plaintiff's Complaint. In doing so, the Court accepts as true all factual allegations in the Complaint. *Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003); *Watkins v. Joy*, 782 F. App'x 892, 895 (11th Cir. 2019) (citing *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008)). Moreover, because Plaintiff proceeds *pro se*, the Court construes the filings liberally. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). It is worth emphasizing, however, that this leniency does not give Plaintiff "special advantages not bestowed on other litigants," nor does it excuse Plaintiff from obeying all local and procedural rules, including those governing pleadings. *Procup*, 760 F.2d at 1115. The Court will neither be a *pro se* litigant's lawyer, *see Jarzynka v. St. Thomas Univ. of Law*, 310 F. Supp. 2d 1256, 1264 (S.D. Fla. 2004), nor will it rewrite or fill in the blanks of a defective pleading, *see Brinson v. Colon*, 2012 WL 1028878, at *1 n.2 (S.D. Ga. Mar. 26, 2012) (internal quotation marks omitted) (citation omitted).

Further, notwithstanding any grant of IFP status, "the court shall dismiss the case at any time if the court determines that— . . . the action or appeal—(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e); *see Watkins*, 782 F. App'x at 893 ("A district court is obligated to dismiss an *in forma pauperis* complaint if it determines that the action fails to state a claim on which relief may be granted." (internal quotation marks omitted) (citation omitted)). Plaintiff must also comply with Federal Rule of Civil Procedure 8, which requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief" as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a). Although a complaint need not contain "detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Similarly, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678

3

(alterations in original) (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### B. Plaintiff's Complaint

Plaintiff alleges he was employed by ARE and that he performed contracted services for Mediacom "through a layered contracting structure" CUI and ARE. (Doc. 1 ¶ 4). Plaintiff also alleges that "Mediacom acted as a joint employer by exerting significant control over Plaintiff's work assignments, job requirements, tools, and performance metrics[,]" and that "CUI exercised operational oversight and management authority over Plaintiff's work and coordinated directives between Mediacom and ARE." (*Id.* ¶¶ 6–7).

Plaintiff's claims for unlawful disability discrimination and retaliation under the ADA (Counts I and II); retaliation for reporting unsafe work conditions to OSHA (Count IV), intentional infliction of emotional distress (Count V); racial discrimination under § 1981 and until title VII (Counts VII and VIII); and retaliation claim under title VII (Count IX) are based on the following alleged facts.

Plaintiff alleges he began training as a cable technician with ARE in early July 2024 and that his managers were Charles Phillips and "Ray." (*Id.* ¶ 8). Plaintiff also alleges he disclosed his autism diagnosis informally during training in July 2024, and later formally on September 8, 2024, via an email to upper management. In October 2024, Plaintiff disclosed his schizophrenia diagnosis, and requested protection from harassment he was experiencing. (*Id.* ¶ 9).

Plaintiff alleges he was issued a ladder and harness, but was not properly trained on the use of the harness, that his requests for safety instructions were dismissed and even mocked, and that no accommodations were made for Plaintiff's disabilities. Plaintiff alleges these actions contributed directly to "Plaintiff's ladder fall," which resulted in Plaintiff sustaining injuries. (*Id.* ¶ 10).

In early September 2024, Plaintiff alleges his manager falsely accused him of damaging property and demanded Plaintiff pay $350 for the alleged damages. According to Plaintiff, the charge was later revealed to be a fabrication, but the financial exploitation caused Plaintiff stress because of ongoing harassment and his own economic struggles. (*Id.* ¶ 11). On September 8, 2024, prior to making the payment, Plaintiff sent an email to "company

leadership" stating he was autistic and that he believed the charge was discriminatory and retaliatory. The Vice President, Ryan Zellner, acknowledged the concerns and told Plaintiff he would "handle it." However, nothing was done. (*Id.* ¶ 12). Plaintiff alleges that President Ashley Eaton later refunded the $350 damage claim, admitting through email that it had been wrongfully charged. (*Id.* ¶ 23).

Plaintiff alleges specific incidents of co-workers posting group messages available to Plaintiff's work team insulting Plaintiff's work ethic, housing status, and mental state, and making racial slurs when referring to customers. In addition, Plaintiff's supervisor Charles Phillips, used racial slurs in a one-on-one conversation with Plaintiff. According to Plaintiff, management did not address these issues. (*Id.* ¶¶ 13, 14).

When Plaintiff fell off the ladder in early October 2024, he asked Mr. Phillips how to report the injury. Mr. Phillips replied that he did not know. (*Id.* ¶ 16). On October 31, 2024, Plaintiff reported the unsafe work conditions and the recent ladder fall injury to OSHA. (*Id.* 18). Within hours after doing so, Plaintiff alleges that Charles Phillips and Ray Zellner arrived unannounced at Plaintiffs home. They informed Plaintiff that he was being terminated, they were "just waiting on a replacement" to take over his route, and they took Plaintiff's van, tools, and equipment.(*Id.*).

Plaintiff states that a few days later, Mr. Zellner visited Plaintiff "and attempted to reframe the firing as a 'suspension pending review.'" (*Id.*) During this second visit, Plaintiff states Mr. Zellner advised that a co-worker had a lot of bad things to say about Plaintiff's work, but Plaintiff was never provided with any formal complaints or documents relating to his alleged poor performance. Plaintiff alleges Defendants were attempting to cover up the real motive for terminating his employment; *i.e.*, retaliation for reporting the unsafe work conditions and his injuries from his fall off the ladder to OSHA and his prior internal complaints. (*Id.*) Plaintiff states the company also cited "excessive maintenance calls" as a reason for his termination, which Plaintiffs alleges was an inaccurate and pretextual justification because he was assigned jobs that were often impossible to complete without additional equipment he did not have. (*Id.* ¶ 15).

Plaintiff alleges that ARE's formal response to his OSHA complaint, authored by Mr. Zellner, contained numerous falsehoods, including claims that Plaintiff faked job reports, used drugs in the company van, and posed a risk to coworkers and customers. (*Id.* ¶ 20).

Plaintiff alleges Mr. Zellner contacted Officer Sellers of the Thomasville Sheriff's Department, resulting in Officer Sellers making an unannounced visit to Plaintiff's home. Plaintiff's allegation is not entirely clear, but it appears Mr. Zellner contacted Officer Sellers out of concern regarding email communications from Plaintiff related to Zellner's family. Plaintiff alleges he had not sent any emails to the family in over 24 hours and had never made any threats. Plaintiff alleges Zellner's allegations had no foundation, were a misuse of police resources, and were intended to frighten and humiliate Plaintiff, and were again in retaliation for Plaintiff filing a complaint with OSHA. (*Id.* ¶ 22).

Finally, Plaintiff alleges he regularly worked between 60 and 72 hours per week but was not compensated for overtime as required by federal law. He alleges that although he was classified as an independent contractor, that Plaintiff was subjected to significant control by Defendants, including mandatory scheduling, performance evaluations, and penalties. Plaintiff alleges Defendants' failure to pay overtime wages constitutes a violation of the Fair Labor Standards Act. (*See id.* at 4, Count III).

Plaintiff also alleges that "due to ongoing discrimination, retaliation, unsafe work conditions, coerced payments, and lack of accommodations, Plaintiff was forced to resign." (*Id.* at 4, Count X). Plaintiff alleges that a reasonable person in his situation would have felt compelled to do the same, and that this amounts to constructive discharge. (*Id.*) Plaintiff also alleges his employment was terminated—instead of that he resigned—he also states that he was told he was suspended, pending review. While these claims appear inconsistent, "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009).

At this time, the Court is unable to conclude that Plaintiff's action is frivolous or malicious or that it fails to state a claim on which relief may be granted.

Accordingly, it is hereby **ORDERED** that service be made on all Defendants by the United States Marshals Services. *See* Fed. R. Civ. P. 4(c)(2) (providing Court must order service by United States Marshals Service if plaintiff is authorized to proceed *in forma pauperis* pursuant

to 28 U.S.C. § 1915; *see also* § 1915(d)). All Defendants shall file an Answer, or other response as they deem appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendants are also reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

**SO ORDERED**, this 8th day of August 2025.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**